THOMAS P. O'BRIEN
United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
J. LANA MORTON-OWENS
Assistant United States Attorney
California State Bar No. 233831
General Crimes Section
        1200 United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012
        Telephone:    (213) 894-3547
        Facsimile:    (213) 894-0141
        Email: lana.morton-owens@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA


                    UNITED STATES DISTRICT COURT

             FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CR No. 09-0153-MMM |
| | ) |
| Plaintiff, | ) GOVERNMENT'S *EX PARTE* |
| | ) APPLICATION FOR AN ORDER |
| v. | ) COMPELLING DEFENDANT TO SUBMIT |
| | ) TO MENTAL EXAMINATION, TO |
| RICHARD MICHAEL WELTON, | ) PRODUCE EXPERT DISCOVERY, AND |
| | ) TO CONTINUE MOTION TO SUPPRESS |
| Defendant. | ) HEARING DATE; MEMORANDUM OF |
| | ) POINTS AND AUTHORITIES; |
| | ) DECLARATION OF J. LANA MORTON- |
| | ) OWENS |
| | ) |
| | ) Hearing Date: July 13, 2009 |
| | ) Hearing Time: 1:15 p.m. |

        Plaintiff United States of America, by and through its

counsel of record, Assistant United States Attorney J. Lana

Morton-Owens, hereby respectfully files its Ex Parte Application

For An Order To Compel Defendant To Submit To A Mental

Examination, To Produce Expert Discovery, And To Continue the

Motion to Suppress Hearing Date, or in the Alternative to Strike

the Declaration of Dr. Nathan Lavid.  ("Application").  The

Application is based upon the attached memorandum of points and authorities, the attached Declaration of J. Lana Morton-Owens and exhibit, the records and files in this case, and such further evidence and argument as may be presented at the hearing on this matter.

Dated: July 1, 2009

Respectfully submitted,

THOMAS P. O'BRIEN
United States Attorney

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division


_____/s/_____
J. LANA MORTON-OWENS
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . ii

I.   INTRODUCTION AND STATEMENT OF FACTS . . . . . . . . . . . 1

II.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . 2

     A.   FEDERAL RULE OF CRIMINAL PROCEDURE 12.2 PERMITS
          THE COURT TO ORDER AN INDEPENDENT EXAMINATION
          DEFENDANT . . . . . . . . . . . . . . . . . . . . . 4

     B.   THE COURT SHOULD EXERCISE ITS DISCRETION AND
          ORDER AN INDEPENDENT MENTAL EXAMINATION OF
          DEFENDANT. . . . . . . . . . . . . . . . . . . . . . 5

     C.   ORDERING AN INDEPENDENT MENTAL EVALUATION DOES
          NOT VIOLATE DEFENDANT'S FIFTH AMENDMENT RIGHTS. . . 10

     D.   DEFENDANT SHOULD PRODUCE ALL EXPERT DISCOVERY
          RELEVANT TO THE ISSUES RAISED IN DEFENDANT'S
          POSITION. . . . . . . . . . . . . . . . . . . . . . 12

     E.   THE COURT SHOULD CONTINUE THE SENTENCING HEARING. . 13

     F.   ALTERNATIVELY, DR. LEVID'S DECLARATION SHOULD BE
          STRICKEN FROM THE RECORD AND NOT CONSIDERED AS
          PART OF DEFENDANT'S MOTION TO SUPPRESS. . . . . . . 14

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . 15

i

# TABLE OF AUTHORITIES

**FEDERAL CASES**                                                       **PAGE(S)**

Fitzpatrick v. United States,
     178 U.S. 304 (1900) . . . . . . . . . . . . . . . .   11

United States v. Hernandez,
     280 F.3d 1216 (9th Cir. 2001) (J. Hawkins, concurring)   .   9

Pawlyk v. Wood,
     248 F.3d 815 (9th Cir. 2001) . . . . . . . . . . . .   6

United States v. Baird,
     414 F.2d 700 (2d Cir. 1969) . . . . . . . . . . . .   8

United States v. Byers,
     740 F.2d 1104 (D.C. Cir. 1984) . . . . . . . . . .   10

United States v. Cohen,
     530 F.2d 43 (5th Cir. 1976) . . . . . . . . . . . .   10

United States v. Halbert,
     712 F.2d 388 (9th Cir. 1983) . . . . . . . . . . .   4, 10

United States v. Handy,
     454 F.2d 885 (9th Cir. 1971) . . . . . . . . . . .   10

United States v. Madrid,
     673 F.2d 1114 (10th Cir. 1982) . . . . . . . . . .   10

United States v. McSherry,
     226 F.3d 153 (2d Cir. 2000) . . . . . . . . . . . .  8, 9

United States v. Phelps,
     955 F.2d 1258 (9th Cir. 1992) . . . . . . . . . . .  5, 9

United States v. White,
     21 F. Supp. 2d 1197 (E.D. Cal. 1998) . . . . . . . .   10

United States v. Winn,
     577 F.2d 86 (9th Cir.1978) . . . . . . . . . . . .   4, 5

**STATE CASES**
State v. Schackart,
     175 Ariz. 494, 858 P.2d 639 (Ariz. 1993) . . . . . . .   10

**TABLE OF AUTHORITIES(CONTINUED)**

**FEDERAL STATUTES**                                                    **PAGE(S)**

18 U.S.C. §§ 2252A(a)(2)(A) . . . . . . . . . . . . . . . . 2, 3

18 U.S.C. §§ 4241 . . . . . . . . . . . . . . . . . . . . . 4

Fed. R. Crim. P. 12.2(c) . . . . . . . . . . . . . . . . . 4

Fed. R. Crim. P. 16(b)(1)(C) . . . . . . . . . . . . . 12, 13

Fed. R. Evid. 705 . . . . . . . . . . . . . . . . . . . . 13

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION AND STATEMENT OF FACTS**

3         On June 29, 2009, defendant Richard Michael Welton

4    ("defendant") filed a Motion to Suppress to be heard on July 13,

5    2009.[1]  Defendant moves to suppress his post Miranda confession

6    based on his assertion that his statements were "involuntary,

7    being a product of improper psychological coercion and deliberate

8    lies by Special Agent Benitez."  Defendant supports his motion

9    with the seven-page declaration of Dr. Nathan E. Lavid.[2]

10        Aside from a listing of his qualifications, Dr. Lavid states

11   that he conducted a psychological evaluation of the defendant on

12   April 17th, 2009, which lasted approximately one and a half

13   hours.  Based on this interview and evaluation, Dr. Lavid

14   affirmatively states that defendant "has suffered from childhood

15   sexual abuse" and that his history of sexual abuse makes him

16   "susceptible to the influence of others."[3]  Dr. Lavid concludes

17   that "where the interviewer [Agent Benitez] disclosed her

18   knowledge of his sexual abuse and offered empathy in a manner

19   that would be used by a mental health professional or a member of

20

21   _____

22        [1]  Defendant failed to seek leave of Court to file this
     untimely motion to suppress.  Moreover, defendant failed to
23   request that the matter be heard on a shortened time schedule.
     As this motion was filed a mere two weeks before the pending
24   hearing on the Motion, government is severely prejudiced in its
     ability to respond to the motion.

25        [2] Defendant did not produce any information related to Dr.
     Levid prior to the filing of his motion.
26
          [3] Defendant did not file his Motion to Suppress under seal,
27   therefore the government's response is similarly filed.

28                                  1

the clergy, disclosing this emotionally-laden information in such a manner compromised Mr. Welton's ability to think clearly, and this impacted his responses during the interview."

The interview to which Dr. Lavid refers was conducted on September 18, 2008, by Special Agent Stephanie Benitez and Task Force Officer Bernell Trapp after defendant's fingerprints were located on printed images of child pornography found in a church.[4]  The interview took place at defendant's residence, with his consent.  Defendant was informed that speaking with the agents was voluntary and he was free to leave at any time.  After waiving his Miranda rights, defendant admitted that he had downloaded images of child pornography from the internet. Defendant also admitted that he had broken into the church to look at the images and stashed them in the church to enable him to return and look at the images repeatedly.  Defendant also admitted that he knew that the images contained children, that is, individuals under the age of 12 years.[5]

The government moves this Court for an order requiring the defendant to submit to an independent psychiatric examination by an expert of the government's choosing.  The Court should exercise its discretion and grant this Motion as an independent evaluation of defendant's mental state is the only meaningful way

---

[4] Attached hereto as Exhibit A is a true and correct copy of the audio recording of the September 18, 2008 interview.

[5] On February 20, 2009, defendant was charged in a two-count indictment with receipt of child pornography and possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(A); (b)(1), 2252A(a)(5)(B); (b)(2).)

2

the government can respond to defendant's motion to suppress.  In
the alternative, the government requests that the Court strike
Dr. Lavid's declaration as well as all arguments based on that
declaration.

**II.  ARGUMENT**

    After reviewing Defendant's Motion to Suppress, the
government sought a stipulation from defense counsel to allow the
government to conduct an independent mental examination of
defendant so as to be able to adequately respond to defendant's
claims of diminished capacity and extraordinary mental and
emotional condition.  <u>See</u> Declaration of J. Lana Morton-Owens
("Morton-Owens Decl."), ¶ 3.  The government also requested that
defendant produce expert discovery, including all reports, notes,
tests, and underlying materials produced by or to his experts.
<u>Id.</u>, ¶ 4.  Defense counsel refused to so stipulate thereby
requiring the government to file the present Application.  <u>Id.</u>

    Because the Federal Rules of Criminal Procedure, case law
and public policy contemplate the government's ability to conduct
independent mental evaluations of a defendant who places his
mental condition at issue, and pursuant to the court's inherent
power to order psychiatric examinations of such a defendant, the
government requests the court to order the following: (1) that
defendant submit to a mental examination by a government expert;
(2) that defendant produce all expert discovery, including all
reports, notes, tests, and underlying material produced by or to
his experts; and (3) that the motion to suppress hearing be

1   continued three weeks[6] to allow for government's expert to

2   examine defendant, review all of the records relevant to the

3   issues raised by defendant, and prepare a report, and to allow

4   the government, thereafter, to adequately respond to Motion.[7]   In

5   the  alternative, the government asks the Court strike the

6   declaration of Dr. Nathan Lavid.  To rule otherwise would

7   unreasonably prohibit the government from responding to the

8   instant motion.

9        **A.**  **FEDERAL RULE OF CRIMINAL PROCEDURE 12.2 PERMITS THE**
                 **COURT TO ORDER AN INDEPENDENT EXAMINATION OF DEFENDANT**

10

11      In pertinent part, Fed. R. Crim. P. 12.2(c) provides: "in an

12   appropriate case the court may, upon motion of the attorney for

13   the government, order the defendant to submit to an examination

14   pursuant to 18 U.S.C. §§ 4241 or 4242."  Section 4241 provides a

15   court with the authority to order an independent examination to

16   determine a defendant's competency to stand trial.  Section 4242

17   provides the court with authority to order an independent

18   examination to determine the existence of insanity at the time of

19   the offense.  Rule 12.2(c) was not intended to cover only those

20   situations involving a traditional insanity defense. Rule 12.2(c)

21   authorizes courts to order medical evaluations of a defendant who

22

23      [6] The trial date in this case is currently scheduled for July

24 21, 2009.  As a granting of this motion will require that
defendant's motion to suppress will be heard after the currently
scheduled trial date, the government will separately move to

25 continue the trial date based on the excludable time created by
the filing of defendant's motion to suppress.

26

27      [7] The Motion to Suppress  hearing is currently scheduled for
July 13, 2002, at 1:15 p.m.

28                                     4

1  intends to rely on mental incapacity or any other mental
2  condition as a defense.

3       In United States v. Halbert, 712 F.2d 388, 390 (9th Cir.
4  1983), the court ordered an independent mental examination of the
5  defendant where he claimed diminished capacity.  In upholding the
6  district court's decision to permit the government to
7  independently examine the defendant, the Ninth Circuit held that
8  although diminished capacity technically may not be an insanity
9  defense, such a defense necessarily weighs on issues of guilt.
10 Id. at 390, citing United States v. Winn, 577 F.2d 86, 89-90 (9th
11 Cir.1978).  The Court went on to state that "issues relating to
12 defendant's mental capacity necessarily overlap with the issue of
13 guilt.  Because Congress intended to permit the admission of
14 statements related to insanity, there is little doubt that it
15 also intended to admit statements related to mental capacity in
16 general."  Id.

17      Here, defendant is placing his mental capacity to consent to
18 a post Miranda interview squarely before the Court through his
19 submission of a mental examination report and findings.  His
20 claim that he lacked the capacity to voluntarily consent to the
21 interview necessarily weighs on issues of guilt because such a
22 finding could require suppression of clear evidence, namely
23 defendant's confession, of guilt.

24      **B.   THE COURT SHOULD EXERCISE ITS DISCRETION AND ORDER AN
25           INDEPENDENT MENTAL EXAMINATION OF DEFENDANT.**

26      Should the Court determine that it lacks the statutory
27
28                                    5

authority to compel defendant to submit to a mental examination, the court has the "inherent power to order a psychiatric examination." United States v. Phelps, 955 F.2d 1258, 1265 (9th Cir. 1992) (holding that "where express statutory authority is lacking, the district court may rely upon its inherent power to order a psychiatric examination"); see also United States v. McSherry, 226 F.3d 153, 155 (2d Cir. 2000) ("'[g]uided by considerations of justice, and in the exercise of supervisory powers, federal courts may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress.'") (quoting United States v. Johnson, 221 F.3d 83, 96 (2d Cir. 2000)) (internal quotations omitted). In Phelps, the district court ordered that the defendant, who had been found not guilty by reason of insanity and was seeking to be released from the federal medical facility to which he had been committed, submit to a psychiatric evaluation by a government expert. Id. at 1260-61. The defendant argued, inter alia, that the district court lacked the statutory authority to order such an examination and appealed. Id. at 1261 & 1265. In affirming the trial court's order, the Ninth Circuit explained that the government's right to a hearing prior to the release of a defendant from a psychiatric hospital after a finding of insanity "would have little value if the government were limited to cross-examining experts who had already concluded that [the defendant] should be released." Id. at 1265. The court went on to hold that

[r]egardless of the type of proceeding, the fact-finder

6

1   must make a determination of the defendant's mental

2   condition.  Questions of mental illness and

3   dangerousness turn 'on the meaning of facts which must

4   be interpreted by expert psychiatrists and

5   psychologists.'  Thus, we hold that the district court

6   has the authority to order psychiatric examinations to

7   test the validity of the [expert's] recommendation.

8   <u>Id.</u> (citation and footnote omitted).[8]

9       While <u>McSherry</u>, <u>supra</u>, concerned the issue of whether

10  government experts could examine the defendant in advance of

11  trial, the rationale in that case should apply equally here.  In

12  that case, the defendant gave notice of his intent to introduce

13  expert testimony "'relating to a mental condition that has

14  bearing on whether the defendant had the requisite mental state

15  required for commission of the crimes charged in the

16  Indictment.'" <u>Id.</u> at 155.  In response, the government moved to

17  compel the defendant to submit to a mental examination by

18  government experts.  The court, pursuant to Federal Rule of

19  Criminal Procedure 12.2 and "its inherent supervisory powers over

20  the administration of criminal justice[,]" ruled that the

21

22  _____

        [8] A psychiatrist's communication with a defendant regarding
23  that defendant's mental status "is often the only meaningful
    evidence available . . . regarding the defendant's mental state."
24  <u>Pawlyk v. Wood</u>, 248 F.3d 815, 825 (9th Cir. 2001).  Moreover,
    because "[p]sychiatry is not . . . an exact science, and
25  psychiatrists disagree widely and frequently on what constitutes
    mental illness, on the appropriate diagnosis to be attached to
26  given behavior and symptoms, [and] on cure and treatment[,]" the
    court should be cautious of one-sided opinions by experts.  <u>See</u>
27  <u>Id.</u> at 823.

28                                  7

defendant's use of his experts was conditioned on his submitting to "an independent psychiatric examination by prosecution experts." Id.  The defendant refused to be examined by government experts and, therefore, was unable to present his expert evidence at trial.

In affirming the trial court's ruling, the Second Circuit held that Rule 12.2 "is not the exclusive source of the power to order a mental examination" and that "the Rule does not extinguish a trial court's inherent power to order a mental examination under appropriate circumstances . . . ." Id.  As the court explained, "[b]efore the promulgation of any rules on the matter, we held that if the defense relies on expert testimony as to the defendant's mental state, it is estopped from depriving the government of an opportunity to examine the defendant[.]" Id. at 156.  The court reasoned that

> "the defendant's election to place in evidence expert
> opinion testimony, based upon defendant's own
> statements to the [expert] whose qualification to
> testify rested upon those statements, which were made
> subsequent to the commission of one of the criminal
> acts charged, estopped the defendant from objecting to
> a like examination of the accused by the Government's
> expert and the admission into evidence of his opinion
> testimony."

Id. (quoting United States v. Baird, 414 F.2d 700, 707 (2d Cir. 1969)).  In holding that the trial court's exercise of its

8

inherent power was reasonable, the court concluded that "[t]he district court order afforded the government no more than rough parity in terms of access to the information that would allow the government's experts to arrive at competing conclusions." Id. at 157.  Finally, the court reaffirmed that "[e]ven if [the defendant] were correct that Rule 12.2 does not confer th[e] power [to order the examination] . . . , we see no basis for abrogating a power long recognized by this Court and others to inhere in courts' supervisory authority over the administration of criminal justice." Id.

Here, the government will be denied an "adequate opportunity to present information to the court regarding" defendant's mental condition if the government is not allowed to independently evaluate defendant.  Like the defendant in McSherry, defendant here wishes to present to the court a one-sided explanation of his conduct "based solely on what the experts were told by the defendant." McSherry, 226 F.3d at 156.  And as in McSherry, if defendant were allowed to do so, there would be "no realistic way for the government to address the proposed expert testimony of the defense . . . ." Id.  Precluding the government from conducting its own evaluation of defendant's mental condition for purposes of opposing the Motion to Suppress would severely limit the government's ability to adequately oppose the motion.  More importantly, the court would be precluded from ruling on the motion in a fully-informed manner and by fully-prepared counsel.  See Hernandez, 280 F.3d at 1216 (J. Hawkins, concurring).  As the

9

1   Ninth Circuit stressed, "[r]egardless of the type of proceeding,

2   the fact-finder must make a determination of defendant's mental

3   condition." Phelps, 955 F.2d at 1265 (emphasis added).  And as

4   in Phelps, the suppression hearing "would have little value if

5   the government were limited to cross-examining experts who had

6   already concluded" that defendant had diminished capacity.  Id.

7   The government must be permitted to "rebut with additional

8   evidence," id., to ensure that defendant's experts' opinions and

9   statements have "sufficient indicia of reliability" as required

10  by U.S.S.G. § 6A1.3(a).

11      **C.   ORDERING AN INDEPENDENT MENTAL EVALUATION DOES NOT
            VIOLATE DEFENDANT'S FIFTH AMENDMENT RIGHTS.**

12

13      Although neither the United States Supreme Court nor the

14  Ninth Circuit court has directly addressed the issue presented

15  here, virtually all federal circuit courts considering analogous

16  situations have held that if a defendant announces an intention

17  to introduce psychiatric evidence to support a claim of mental

18  defect, a court-ordered mental examination of the defendant by an

19  expert for the government does not violate the privilege against

20  self-incrimination. See, e.g., United States v. Halbert, 712 F.2d

21  388, 390 (9th Cir. 1983); United States v. Madrid, 673 F.2d 1114,

22  1121 (10th Cir. 1982); United States v. Cohen, 530 F.2d 43, 47-48

23  (5th Cir. 1976); United States v. Handy, 454 F.2d 885, 888-89

24  (9th Cir. 1971); United States v. White, 21 F. Supp. 2d 1197,

25  1200 (E.D. Cal. 1998); State v. Schackart, 175 Ariz. 494, 858

26  P.2d 639, 645 (Ariz. 1993); United States v. Byers, 239 U.S. App.

27

28                               10

1   D.C. 1, 740 F.2d 1104, 1115 (D.C. Cir. 1984).

2       While the grounds for the decisions vary, see Byers, 740

3   F.2d at 1111-13 (analyzing various justifications advanced by the

4   courts), the overarching rationale can be described as one of

5   fundamental fairness and judicial common sense, taking practical

6   considerations into account in determining the reach of the Fifth

7   Amendment privilege against self-incrimination.  As the Byers

8   court explained, when a defendant introduced psychiatric

9   testimony to show why he should not be punished for a crime, "the

10  state must be able to follow where he has led." Id. at 1113.  To

11  hold that the Fifth Amendment prevents a compelled examination in

12  this circumstance would deprive the State of the only adequate

13  means to meet the defense expert's testimony.

14      This rationale finds support in United States Supreme Court

15  decisions addressing the privilege against self-incrimination. In

16  Fitzpatrick v. United States, 178 U.S. 304, 315-16, 20 S. Ct.

17  944, 44 L. Ed. 1078, 1 Alaska Fed. 625 (1900), for example, the

18  Court held that a criminal defendant may not testify at trial on

19  his own behalf and then assert a Fifth Amendment privilege to be

20  free from cross-examination on matters raised by his own

21  testimony on direct examination.

22      Here, defendant is putting forth evidence by way of an

23  expert examination and report that he lacked the ability to

24  voluntarily consent to the interview by Agent Benitez.  While not

25  a direct statement of diminished capacity, clearly defendant

26  maintains that his alleged sexual abuse so scarred him that he is

27

28                              11

unable to competently waive his right to remain silent and was essentially compelled into making inculpatory statements.  That allegation can only be classified as a diminished capacity defense that weighs squarely on guilt.  Defendant should not be able to make such allegations without the government being afforded the opportunity to rebut his claims with its own expert examination.  Similarly, defendant cannot now hide behind the Fifth Amendment when he opened the door to this inquiry.

**D.   DEFENDANT SHOULD PRODUCE ALL EXPERT DISCOVERY RELEVANT TO THE ISSUES RAISED IN DEFENDANT'S POSITION.**

Under the Federal Rules of Criminal Procedure, "if the defendant has given notice under Rule 12.2(b) of an intent to present expert testimony on the defendant's mental condition[, the defendant must provide a written summary of testimony which] shall describe the witnesses' opinions, the bases and reasons for those opinions, and the witnesses' qualifications." Fed. R. Crim. P. 16(b)(1)(C).

The Advisory Committee Notes explain the purpose of this rule as follows:

> New subdivisions (a)(1)(E) and (b)(1)(C) expand federal criminal discovery by requiring disclosure of the intent to rely on expert opinion testimony, what the testimony will consist of, and the bases of the testimony.  The amendment is intended to minimize surprise that often results from

12

1    unexpected expert testimony, reduce the need

2    for continuances, and to provide the opponent

3    with a fair opportunity to test the merit of

4    the expert's testimony through focused cross-

5    examination. . . . Without regard to whether

6    a party would be entitled to the underlying

7    bases for expert testimony under other

8    provisions of Rule 16, the amendment requires

9    a summary of the bases relied upon by the

10   expert.  That should cover not only written

11   and oral reports, tests, reports, and

12   investigations, but any information that

13   might be recognized as a legitimate bases for

14   an opinion under Federal Rule of Evidence

15   703, including opinions of other experts.

16   Fed. R. Crim. P. 16 Advisory Committee Notes, 1993 Amendment.

17       In addition, Fed. R. Evid. 705 assumes that the cross-

18   examiner will have advance knowledge of facts essential for

19   cross-examination.  See Fed. R. Evid. 705 Advisory Committee

20   Notes ("The answer assumes that the cross-examiner had the

21   advance knowledge which is essential for effective cross-

22   examination").

23       While the present case is at the motion to suppress stage

24   and Rule 16 does not, on its face, apply, the court should

25   nonetheless order that defendant produce the foregoing material

26   under its inherent authority so that the government can

27

28                              13

adequately confront defendant's experts' testimony.

**E.   THE COURT SHOULD CONTINUE THE SUPPRESSION HEARING AND BRIEFING SCHEDULE.**

In order to allow a government expert to examine defendant, review all the necessary records and documents, and prepare a report so that the government can adequately and intelligently respond to defendant's motion to suppress, the government respectfully requests that the Court continue the hearing no less than three weeks.

Moreover, the government also asks that the Court set a new briefing schedule allowing the government and defendant adequate time to address this issue.

**F.   ALTERNATIVELY, DR. LEVID'S DECLARATION SHOULD BE STRICKEN FROM THE RECORD AND NOT CONSIDERED AS PART OF DEFENDANT'S MOTION TO SUPPRESS.**

Should the Court conclude that no independent evaluation is warranted, the government requests that Dr. Lavid's declaration be stricken from the record.  To allow the declaration to stand without reasonable contradiction would unreasonably prejudice the government.

14

**III. CONCLUSION**

     Based on the foregoing, the government respectfully requests that the court order defendant to submit to a mental examination

Dated: July 1, 2009

                                   Respectfully submitted,

                                   THOMAS P. O'BRIEN
                                   United States Attorney

                                   CHRISTINE C. EWELL
                                   Assistant United States Attorney
                                   Chief, Criminal Division


                                   _____/s/_____
                                   J. LANA MORTON-OWENS
                                   Assistant United States Attorney

                                   Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA

15

# CD COPY OF
# 9-18-2009
# INTERVIEW
# OF RICHARD MICHAEL WELTON

# EXHIBIT A