THOMAS P. O'BRIEN
United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
J. LANA MORTON-OWENS
Assistant United States Attorney
California State Bar No. 233831
General Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:    (213) 894-3547
     Facsimile:    (213) 894-0141
     Email: lana.morton-owens@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CR No. 09-0153-MMM |
| Plaintiff, | ) GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR ACQUITTAL PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 29 |
| v. | ) |
| RICHARD MICHAEL WELTON, | ) |
| Defendant. | ) |

Plaintiff United States of America, by and through its attorney of record, the United States Attorney for the Central District of California, hereby submits this opposition to defendant's motion for acquittal under Federal Rule of Criminal Procedure 29.

///

The government's opposition is based on the attached Memorandum of Points and Authorities, the files and records of this case, the arguments made at the August 4, 2009 hearing, and such additional argument that the Court may take on the motions.

Dated: August 10, 2009

Respectfully submitted,

THOMAS P. O'BRIEN
United States Attorney

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division


_____/s/_____
J. LANA MORTON-OWENS
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

### TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . 1

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . i

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . 1

II.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . 2

     A.   Standard For Rule 29 Motion For Judgment Of
          Acquittal . . . . . . . . . . . . . . . . . . . 2

     B.   The Child Pornography Defendant Received and
          Possessed Traveled Interstate . . . . . . . . . 2

     C.   The Court Has Jurisdiction and Venue Over
          Defendant's  Receipt of Child Pornography . . . . . 4

     D.   Defendant's Receipt and Possession of Child . . . . 8
          Pornography Occurred Within the Statute of
          Limitations
          1.   Introduction  . . . . . . . . . . . . . . 8

          2.   Defendant Received His Child Pornography in . 12
               2005 and 2006

          3.   Defendant Possessed His Child Pornography . . 14
               Within the Statute of Limitations

          4.   The Court May Rely On The Testimony
               Defendant Introduced Regarding
               the Reliability of the Time Stamps
               Located on Government's Exhibits 1-95 . . . . 18

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . 21

i

# TABLE OF AUTHORITIES

**FEDERAL CASES**                                                    **PAGE(s)**

Apprendi v. New Jersey,
    530 U.S. 466 (2000)   . . . . . . . . . . . . . . . . . . 12

Hanson v. United States,
    285 F.2d 27 (9th Cir. 1960) . . . . . . . . . . . . . . .  4

Hill v. United States,
    284 F.2d 754 (9th Cir. 1961), cert. denied 365 U.S. 873
    (1971)   . . . . . . . . . . . . . . . . . . . . . . . .  5

Jackson v. Virginia,
    443 U.S. 307 (1976) . . . . . . . . . . . . . . . . . .  5

Mugalli v. Ashcroft,
    258 F.3d 52 (2nd Cir. 2001) . . . . . . . . . . . . . . 12

Patterson v. New York,
    432 U.S. 197 (1977) . . . . . . . . . . . . . . . . . . 12

Renderos v. Ryan,
    469 F.3d 788 (9th Cir. 2006) . . . . . . . . . . . . . 13

Stogner v. California,
    539 U.S. 607 (2003) . . . . . . . . . . . . . . . . . .  9

United States v. Agnotti,
    105 F.3d 539 (9th Cir. 1997) . . . . . . . . . . . . .  5

United States v. Alvarez-Valenzuela,
    231 F.3d 1198 (9th Cir. 2000) . . . . . . . . . . . . .  2

United States v. Beasley,
    346 F.3d 930 (9th Cir. 2003) . . . . . . . . . . . . . 12

United States v. Carrasco,
    257 F.3d 1045 (9th Cir. 2001) . . . . . . . . . . . . . 15

United States v. Childs,
    5 F.3d 1328 (9th Cir. 1993) . . . . . . . . . . . . . .  5

United States v. Cruz,
    554 F.3d 840 (9th Cir. 2009) . . . . . . . . . . . . . 12

United States v. Delgado,
    545 F.3d 1195 (9th Cir. 2008) . . . . . . . . . . . . .  6

1

**TABLE OF AUTHORITIES (cont'd)**

United States v. Dominguez-Mestas,
    929 F.2d 1379 (9th Cir. 1991) . . . . . . . . . . 12

United States v. Gonsalves,
    675 F.2d 1050 (9th Cir. 1982) . . . . . . . . . . 13

United States v. Gourde,
    440 F.3d 1065 (9th Cir. 2006) . . . . . . . . . . 15

United States v. Hernandez,
    189 F.3d 785 (9th Cir. 1999) . . . . . . . . . . . 5

United States v. Jones,
    231 F.3d 508 (9th Cir. 2000) . . . . . . . . . . . 4

United States v. Kaysto,
    868 F.2d 1020 (9th Cir. 1989) . . . . . . . . . . . 5

United States v. Krstic,
    558 F.3d 1010 (9th Cir. 2009) . . . . . . . . . . 15

United States v. LeMaux,
    994 F.2d 684 (9th Cir. 1993) . . . . . . . . . . 12

United States v. Lo,
    231 F.3d 471 (9th Cir. 2000) . . . . . . . . . . 13

United States v. Magallon-Jimenez,
    219 F.3d 1109 (9th Cir. 2000) . . . . . . . . . . . 2

United States v. Pace,
    314 F.3d 344 (9th Cir. 2002) . . . . . . . . . . . 5

United States v. Powell,
    498 F.2d 890 (9th Cir. 1974),
    cert. denied, 419 U.S. 866 (1974) . . . . . . . . . . 5

United States v. Rubio-Villareal,
    967 F.2d 294 (9th Cir. 1992) . . . . . . . . . . . 4

United States v. Ruelas-Arrequin,
    219 F.3d 1056 (9th Cir. 2000) . . . . . . . . . . . 4

iii

TABLE OF AUTHORITIES (cont'd)

United States v. Trenary,
        473 F.2d 680 (9th Cir. 1973) . . . . . . . . . . 5, 6, 8

United States v. Walker,
        27 F.3d 417 (9th Cir. 1994) . . . . . . . . . . . 15

United States v. Warren,
        984 F.2d 325 (9th Cir. 1993) . . . . . . . . . . . 4

**FEDERAL STATUTES**

18 U.S.C. § 2252A(a)(2)(A) . . . . . . . . . . . . . 2, 8

18 U.S.C. § 3282 . . . . . . . . . . . . . . . . . 8

18 U.S.C. § 3283 . . . . . . . . . . . . . . . . . 9, 12

18 U.S.C. § 3299 . . . . . . . . . . . . . . . . . 8
                                                        11

**FEDERAL RULES OF CRIMINAL PROCEDURE**

Federal Rule of Criminal Procedure 29 . . . . . . . . . . passum

1                    MEMORANDUM OF POINTS AND AUTHORITIES

2    I.    INTRODUCTION

3          At the conclusion of his one-day bench trial, defendant

4    Richard Michael Welton ("defendant") orally brought a motion for

5    judgment of acquittal pursuant to Federal Rule of Criminal

6    Procedure 29.   ("Motion")   The motion was based on his claims

7    that: (1) the government failed to establish the child

8    pornography defendant received and possessed traveled interstate;

9    (2) the Court lacked jurisdiction and venue as to Count One of

10   the indictment (receipt of child pornography) because there was

11   insufficient evidence to demonstrate where defendant downloaded

12   the child pornography; and (3) the government failed to prove

13   that defendant's receipt and possession of child pornography took

14   place within the Statute of Limitations.

15         Each of defendant's arguments fails.   First, the evidence

16   presented at trial demonstrates that many of the images of child

17   pornography were accessed using an IP Address in Madrid, Spain.

18   Moreover, many of the images were created in states other than

19   California and therefore traveled interstate prior to defendant's

20   receipt and possession of the images.   Second, this Court has

21   jurisdiction and the Central District of California is the proper

22   venue because defendant received and possessed the child

23   pornography within this district.   Specifically, by his own

24   admission, defendant possessed the images inside the nursery of

25   the First Presbyterian Church in Covina, California.   Defendant

26   possessed the child pornography after having downloaded the

27   images from a computer located inside a nearby church.   Finally,

28   the evidence demonstrates that defendant received the images of

                                      1

1  child pornography, by his own admission, sometime between 2005

2  and 2006.   He then possessed the images until August 22, 2007,

3  when the images were discovered.   This is well within the

4  applicable statute of limitations.

5  II.   **ARGUMENT**

6        A.   Standard For Rule 29 Motion For Judgment Of Acquittal

7        Under Federal Rule of Criminal Procedure 29, "[t]here is

8  sufficient evidence to support a conviction if, viewing the

9  evidence in the light most favorable to the prosecution, any

10 rational trier of fact could have found the essential elements of

11 the crime beyond a reasonable doubt."   United States v. Magallon-

12 Jimenez, 219 F.3d 1109, 1112 (9th Cir. 2000).   When considering a

13 Rule 29 motion, "all reasonable inferences are to be drawn in

14 favor of the government, and any conflicts in the evidence are to

15 be resolved in favor of the jury's verdict."   United States v.

16 Alvarez-Valenzuela, 231 F.3d 1198, 1201 (9th Cir. 2000) (citation

17 omitted).

18      B.   The Child Pornography Defendant Received and Possessed
              Traveled Interstate
19

20      To prove defendant guilty of receipt and possession of child

21 pornography, the government must establish beyond a reasonable

22 doubt that the child pornography was either "mailed, shipped, or

23 transported in interstate or foreign commerce by any means,

24 including a computer."   See 18 U.S.C. § 2252A(a)(2)(A) and 18

25 U.S.C. § 2252A(a)(5)(b).

26      Defendant claims that the government has not made this

27 showing because, according to defendant, the government was

28

                                   2

1  unable to establish the physical location of the computer

2  defendant used to receive and print the child pornography he

3  possessed.   (Reporter's Transcript of Proceedings, August 4,

4  2009, (hereafter "TR") at 210:19-23.)   Defendant's argument is

5  without merit.

6       First, and most simply, defendant stipulates that three of

7  the child pornography photographs defendant received and

8  possessed were taken in other states.  (Gov't. Exh. 123.)   These

9  photographs therefore necessarily traveled interstate to get to

10 California, where the evidence establishes that defendant

11 received and possessed them.[1]   (Gov't Exh. 89 and 91.)

12       Second, both defendant's admissions and expert testimony

13 establish that defendant used the internet to download child

14 pornography. (TR 77:7-11; 117:7-14.)   The expert opined that this

15 use of the internet necessarily involved interstate commerce,

16 because it would be impossible to access the computer, search for

17 images, and communicate only with computers in the same

18 geographic region.   (TR 191:4-16.)

19       Third, the evidence establishes that the majority of the

20 images of child pornography were accessed from the IP Address

21 213.4.130.210.   (See Gov't. Exhs. 66; 71; 86-91.)   Special Agent

22 Christopherson testified that he determined that this IP Address

23 was currently located in Madrid, Spain; and that the physical

24 location of the IP Address was unlikely to have substantially

25 changed since the time that defendant used the internet to access

26 the child pornograpghy.   (TR 141:6-143:7; 146:19-147:5.)

27

28

[1] See Section C, below.

3

C.   The Court Has Jurisdiction and Venue Over Defendant's
     Receipt of Child Pornography

Defendant claims that the government failed to establish that this Court has jurisdiction and venue over defendant's receipt of child pornography.[2] Defendant is incorrect. Substantial evidence establishes beyond a reasonable doubt that defendant received child pornography in the Central District of California.

It is for the court to decide, as a matter of law, whether a particular act or consequence occurring within the boundaries of the United States is sufficient to give it jurisdiction. See, e.g., United States v. Warren, 984 F.2d 325, 327 (9th Cir. 1993).[3]

The government must prove venue by only a preponderance of the evidence.[4] United States v. Jones, 231 F.3d 508, 516 (9th

---

[2] Defendant concedes that the government has proper jurisdiction over the second count of the indictment, which charges possession of child pornography. (TR. 213:3-6; 214:14-17.)

[3] Importantly, the standard of review employed in sufficiency of the evidence cases is highly deferential. United States v. Rubio-Villareal, 967 F.2d 294, 296 (9th Cir. 1992). When reviewing for sufficiency of the evidence, the Ninth Circuit will view the evidence in "the light most favorable to the prosecution and ... will affirm the conviction if 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting Jackson v. Virginia, 443 U.S. 307, 313 (1976) (emphasis in the original)).

[4] If a defect in venue is clear on the face of the indictment, a defendant's objection must be raised before the government has completed its case. United States v. Ruelas-Arreguin, 219 F.3d 1056, 1060 (9th Cir. 2000) (citing Hanson v. United States, 285 F.2d 27, 28 (9th Cir. 1960)). However, if the venue defect is not evident on the face of the indictment, a defendant may challenge venue in a motion for acquittal at the close of the government's case. Id. Notwithstanding the fact that defendant preserved his venue objection, acquittal is not

4

1  Cir. 2000); <u>United States v. Agnotti</u>, 105 F.3d 539, 541 (9th Cir.

2  1997); <u>United States v. Powell</u>, 498 F.2d 890, 891 (9th Cir.

3  1974), <u>cert. denied</u>, 419 U.S. 866 (1974); <u>United States v.</u>

4  <u>Trenary</u>, 473 F.2d 680, 682 (9th Cir. 1973); <u>Hill v. United</u>

5  <u>States</u>, 284 F.2d 754, 755 (9th Cir. 1961) (proof of venue in a

6  criminal prosecution is essential, however, it may be proved

7  through either direct or circumstantial evidence and need not be

8  proved beyond a reasonable doubt), <u>cert. denied</u> 365 U.S. 873

9  (1971).

10      In order to decide whether venue is proper, a court must

11  identify the conduct constituting the offense and then discern

12  the location of the commission of the criminal acts.  <u>United</u>

13  <u>States v. Pace</u>, 314 F.3d 344, 349 (9th Cir. 2002).  Direct proof

14  of venue, however, is not necessary where circumstantial evidence

15  in the record as a whole supports the inference that the crime

16  was committed in the district where venue was laid.  <u>Jones</u>, 231

17  F.3d at 516 (quoting <u>United States v. Childs</u>, 5 F.3d 1328, 1332

18  (9th Cir. 1993) (citations omitted)).  Courts have found that a

19  confession, with additional evidence that fortifies, augments or

20  supports it, is sufficient to establish venue.  <u>See e.g.</u> <u>United</u>

21  <u>States v. Delgado</u>, 545 F.3d 1195, 1206 (9th Cir. 2008) (although

22  the proper remedy for improper venue.  <u>Id</u>; <u>see also</u> <u>United States</u>

23  <u>v. Hernandez</u>, 189 F.3d 785, 792 n. 5 (9th Cir. 1999) (rejecting
    contention by defendant that a judgment of acquittal is the

24  appropriate remedy in the case of improper venue).  When venue
    has been improperly laid in a district, the district court should

25  either transfer the case to the correct venue upon the
    defendant's request pursuant to Federal Rule of Criminal

26  Procedure 21(b), or in the absence of such a request, dismiss the
    indictment without prejudice.  <u>United States v. Kaysto</u>, 868 F.2d

27  1020, 1021 (9th Cir. 1989) ("[w]hile venue presents a question of
    fact and must be proved by the government, it is not an essential

28  element of the offense ... [t]hus, the failure to establish venue
    does not go to guilt or innocence.").

1    a confession must be corroborated by independent evidence, the

2    corroboration need not independently establish any element beyond

3    a reasonable doubt, but must merely fortify the truth of the

4    confession) (quoting United States v. Lopez-Garcia, 683 F.2d

5    1226, 1228 (9th Cir. 1982) (citations and quotations omitted));

6    see also Trenary, 473 F.2d at 682 (judicial notice may be taken

7    of a map of the area and, considering the time factor, distance

8    covered and probable source of the drugs, it can be concluded

9    that it was more reasonable than not that defendant passed

10    through the district).

11       Here, the government put on substantial evidence that

12    defendant received his child pornography in the Central District

13    of California. First, defendant admitted to storing his child

14    pornography inside the First Presbyterian Church in Covina,

15    California. (Gov't. Exh. 106(b).) Second, defendant admitted to

16    interviewing agents that he received his child pornography by

17    downloading and printing out the images using a computer inside a

18    church. (Gov't. Exh. 106.) When questioned about the many

19    different dates (primarily from 2005 and 2006) that appear on the

20    child pornography, defendant indicated that he repeated this

21    process -- the downloading, printing out, and storing -- on

22    several occasions. (Gov't. Exh. 106.) The child pornography

23    images themselves support defendant's statements regarding the

24    repetitive nature of his receipt and possession, indicating that

25    defendant used four different browsers (and therefore likely four

26    different computers) over the course of no fewer than thirteen

27    separate occasions over a three-month period to receive and

28

1 | possess child pornography.   (Gov't Exh. 1-95.)[5]

2 |     The importance of defendant's statements is clear: defendant

3 | was downloading and printing out (i.e., receiving) the child

4 | pornography in a church close to the church in Covina,

5 | California, in which he was storing (i.e., possessing) it.   No

6 | other factual scenario is plausible.   Defendant admits possessing

7 | the child pornography in a church in Covina, admits receiving the

8 | child pornography in an unspecified "church," and admits, that he

9 | downloaded, printed out, and stored the child pornography in a

10 | church on multiple occasions.   It makes no sense to infer from

11 | these facts that defendant traveled out of the country, or even

12 | out of the Central District where he lives, to find a computer,

13 | access child pornography, download it, and print it out, and then

14 | travel back to the Central District (carrying what defendant knew

15 | was contraband) on each occasion to store it.   Rather, the

16 | inference is much more plain, and much more simple: defendant

17 | received (downloaded and printed) the child pornography near

18 | where he kept it.

19 |     Defendant's only attempt to establish that the images could

20 | have been received outside the country was in his cross-

21 | examination of computer expert Chris Christopherson.   (TR 182:17-

22 | 25.)   When asked if the computers defendant used could have been

---

[5] Even without relying on the truth of the dates listed on each image, the government established through the testimony of computer expert Chris Christoperson that the images were likely accessed on different occasions.   (TR 133:25-134:11.)   See also, Gov't. Exhs. 60 (8/30/2005); 1 (11/8/2005); 67 (11/13/2005); 77 (12/3/2005); 86 (12/5/2005); 32 (12/8/2005); 75 (12/17/2005); 31 (12/18/2005); 39 (12/19/2005); 50 (2/16/2006); 10 (2/18/2006); 33 (2/19/2006); 28 (2/25/2006); and 43 (3/3/2006).

in Mexico, Agent Christopherson responded that it was unlikely
because there was no Spanish language contained on the images.
(Id.)  When asked if the computers defendant used could have been
in Canada, Agent Christopherson agreed that they could have been.
(Id.)  However, there is no evidence that defendant has ever been
to Canada or Mexico, let alone that he traveled there on multiple
occasions to download images, then traveled in a car with illegal
images of child pornography for hours, only to stash the images
inside the church in Covina.  Moreover, defendant admits that he
had no special reason for selecting the First Presbyterian Church
- quite the opposite -he said he went in there because the "door
was open."  Therefore, it would be nonsensical for defendant to
travel long distances from where the child pornography was
downloaded just to store it in the First Presbyterian Church.
Consequently, the only reasonable conclusion to draw from the
evidence is that defendant's receipt of child pornography took
place in close proximity to where he admittedly stored it.  As a
result, venue is established.

> D.   Defendant's Receipt and Possession of Child
>      Pornography Occurred within the Statue of
>      Limitations

### 1.   Introduction

Defendant claims that the government has failed to show that
defendant's receipt and possession of child pornography occurred
within the five year statute of limitations that defendant
contends applies pursuant to 18 U.S.C. § 3282.  (TR 214:21-22.)
Defendant is incorrect -- the evidence and law establish that
there is no statute of limitations that applies to defendant's
conduct.

1       Currently, and as of July 27, 2006, there is no statute of

2   limitations for possession and receipt of child pornography.   The

3   applicable statute provides:

4         Notwithstanding any other law, an indictment may be

5         found or an information instituted at any time without

6         limitation for any offense under section 1201 involving

7         a minor victim, and for any felony under chapter 109A,

8         110 (except for section 2257 and 2257A), or 117, or

9         section 1591.

10   18 U.S.C. § 3299.   Section 3299 went into effect on July 27, 2006

11   as part of the Adam Walsh Child Protection and Safety Act of

12   2006, Pub. L. No. 109-248, § 211, 120 Stat. 587 (July 27, 2006)

13   ("Adam Walsh Act").

14       To prove that Section 3299 applies to defendant's conduct,

15   the government must therefore show that the conduct occurred

16   after July 27, 2006 (the enactment date of the new "unlimited"

17   limitations period), or that the July 27, 2006 enactment occurred

18   before the expiration of the original, pre-enactment, statute of

19   limitations period.   While an expired statute of limitation

20   cannot be revived by statute, statutory changes to a statutes of

21   limitations do apply to crimes that have already taken place, so

22   long as the original statute of limitation was still running.

23   Stogner v. California, 539 U.S. 607, 618 (2003) (if prior

24   limitations period has not expired, enlargement of that period

25   does not violate ex post facto clause).

26       The limitations period that applied prior to the July 27,

27   2006 enactment of the new "unlimited" statute is that contained

28   in 18 U.S.C. § 3283 and its predecessor statute, 18 U.S.C. §

3509.[6]  The history of these statutes, and the limitations

---

[6]Although Section 3283 does not apply by explicit terms to Section 2252A, violations of Section 2252A involve minor victims and thus fall within the scope of that provision.  As noted above, the limitations language that later became Section 3283 was originally codified in 1990 as part of 18 U.S.C. § 3509, which contains provisions relating to the rights of child victims and witnesses.  See Crime Control Act of 1990, Pub.L.No. 101-647, 1990 S. 3266 (1990).  Subsection 3509(k) provided that:

> No statute of limitations that would otherwise preclude prosecution for an offense involving the sexual or physical abuse of a child under the age of 18 years shall preclude such prosecution before the child reaches the age of 25 years.

18 U.S.C. § 3509(c) (1990).  In addition to this language in subsection k, Section 3509 contains a definition of "sexual abuse" that applies to the entire section.  18 U.S.C. § 3509(a)(8).  Sexual abuse, as defined by Section 3509 in 1990 and today, includes:

> the employment, use, persuasion, inducement, enticement, or coercion of a child to engage in, or assist another person to engage in, sexually explicit conduct or the rape, molestation, prostitution <u>or other form of sexual exploitation of children</u>, or incest with children.

18 U.S.C. § 3509(a)(8) (emphasis added).  In addition, Section 3509(a)(6) provided, and still provides: "the term 'exploitation' means <u>child pornography</u> or child prostitution."  See 18 U.S.C. § 3509(a)(6) (emphasis added).

In 1994, the statute of limitations language of Section 3509(k) was moved, verbatim, into Chapter 213, entitled "Limitations Periods," as Section 3283.  See Violent Crime Control and Law Enforcement Act of 1994, Pub.L.No. 103-322, 108 Stat. 1796 (1994).  Section 330018 of Public Law 103-322 was entitled "Repeal of superfluous statute of limitation and transfer of child abuse statute of limitation."  In other words, in 1994, Congress simply moved the statute of limitations for sexual abuse cases from the child victims' rights section of the criminal code to the limitations chapter of the code, amending Section 3283 to contain the statute of limitations language, and repealing the provision from § 3509(k) as a "conforming repeal." Id.

In 2003, Congress again enlarged the limitations period for child sexual abuse crimes, amending Section 3283 to allow for prosecution not just until the child reaches the age of 25 years, but for the entire "life of the child."  See Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act, Pub.L.No. 108-21, 117 Stat. 660, Title II, § 202 ("No statute of limitations for child abduction and sex crimes") (April 30, 2003).  Three years later, Congress again enlarged the statute of limitations for child sex abuse crimes.  18 U.S.C. § 3283; see also Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub.L.No. 109-162, 119 Stat. 2960, §

periods they dictated, is set forth below.

1. Before November 29, 1990, there was no specific statute of limitations for child sex offenses.

2. On November 29, 1990, 18 U.S.C. § 3509(k) became law, extending the statute of limitations for an offense that "involv[es] the sexual or physical abuse of a child" until the victim reaches age 25.

3. On September 13, 1994, Section 3509(k) was re-codified at 18 U.S.C. § 3283.

4. On April 30, 2003, Section 3283 was amended so that the statute of limitations for an offense that involves the sexual or physical abuse of a child runs for the life of the child.

5. On January 5, 2006, Section 3283 was amended again so that the statute of limitations for an offense that involves the sexual or physical abuse of a child expires 10 years after the offense or runs for the life of the child, whichever is longer.

As discussed below, the evidence shows that defendant received his child pornography in 2005 and 2006, and that therefore the 10 year statute of limitation in effect as of January 2006 applied at the time of his conduct. This in turn means -- because this January 2006 10-year statue was running in July 2006, when the

_____

1182 (January 5, 2006). While twice enlarging the statute of limitations, Congress never changed the relevant language referring to the sexual abuse or exploitation of a child, and did not create a new definition of sexual abuse or exploitation. It follows that the term "sexual abuse" in 18 U.S.C. § 3283 can be understood only by reference to the definitions of exploitation and sexual abuse that are found in 18 U.S.C. § 3509.

"unlimited" period was enacted -- that defendant's receipt of child pornography is governed by the July 2006 "unlimited" limitations period.  With respect to defendant's possession of child pornography, and also as discussed below, the continuing nature of defendant's possession indicates that, regardless of what statute of limitations applied, his conduct would be well within it.

> 2.   <u>Defendant Received His Child Pornography in 2005 and 2006</u>

The evidence establishes that defendant's receipt of his child pornography occurred in 2005 and 2006.[7]  First, and most

---

[7]The issue of whether the defendant bears any production or notice burden when intending to rely on a statute of limitations defense has not been resolved.  Similarly, there is a lack of authority pertaining to the applicable evidentiary standard the government must meet in order to overcome a statue of limitations defense.  Failure to comply with the statute of limitations is an affirmative defense.  <u>See</u> <u>United States v. Lo</u>, 231 F.3d 471, 480-81 (9th Cir. 2000); <u>United States v. LeMaux</u>, 994 F.2d 684, 689-90 (9th Cir. 1993).  Generally, "the defendant must prove the elements of [an] affirmative defense by a preponderance of the evidence," unless some other standard is set by statute.  <u>United States v. Cruz</u>, 554 F.3d 840, 851 (9th Cir. 2009); <u>see also</u> <u>United States v. Beasley</u>, 346 F.3d 930, 935 (9th Cir. 2003); <u>United States v. Dominguez-Mestas</u>, 929 F.2d 1379, 1383 (9th Cir. 1991).  The Due Process Clause does not require that the government prove the absence of every possible exception or mitigating circumstance.  <u>See</u> <u>Patterson v. New York</u>, 432 U.S. 197, 210-11 (1977) (no due process violation when the burden was placed on the defendant to prove an affirmative defense which was not a material element of the offense).  In <u>Apprendi v. New Jersey</u> (2000) 530 U.S. 466, 476, the United States Supreme Court also held the federal constitution requires the prosecution to prove beyond a reasonable doubt any fact, other than a prior conviction, that increases the maximum punishment for the offense.  However, no United States Supreme Court or lower federal court case holds, as a matter of federal constitutional law, that the timeliness of a criminal prosecution must be proved beyond a reasonable doubt.  <u>See</u> <u>Renderos v. Ryan</u>, 469 F.3d 788, 796 (9th Cir. 2006) (recognizing a lack of precedent and applying the preponderance of the evidence standard).
The most analogous case appears to be <u>United States v. Gonsalves</u>, 675 F.2d 1050, 1054 (9th Cir. 1982).  In <u>Gonsalves</u>,

simply, defendant himself admitted as much, twice over:

- When asked during his interview where he printed the child pornography, defendant first indicated that it must have been in Lomita.  The agent then pointed out that the images are dated 2006, and that it therefore "it must have been after that."  Defendant agreed, saying "yeah."  (Gov't. Exh. 106(G).)

- When defendant was first shown Exhibits 1-95, he said "this is old stuff."  (Gov't Exh. 106(c).)  When the agent told him that the images were dated 2005 and 2006, defendant said, "yeah, not that old."  (Gov't. Exh. 106(c); see also TR. 75:18-22).

Defendant therefore clearly admitted that he received the child pornography no earlier than 2005 or 2006 -- dates well within the limitations period.

Second, Detective Trapp testified that the reason the agents brought up the 2005 and 2006 dates in defendant's interview was to determine if defendant was out of custody at the time and therefore able to have downloaded and stashed the images:

Q.   When the years of 2005 and 2006 were mentioned, what

---

the Ninth Circuit held that the government bears a preponderance of the evidence burden when examining whether a given statute of limitations has tolled based on the defendant's apparent flight from prosecution.  Similarly, the government submits that the Court should apply this preponderance standard to the instant case.  Nevertheless, regardless of whether the Court applies a preponderance of the evidence or a beyond a reasonable doubt standard, or to which party that burden is applied, the government has met its burden.  In the instant matter, the defendant failed in any manner to put the government on notice of an intention to raise the statute of limitation affirmative defense.  Indeed, in defendant's proposed jury instructions, he gives no indication of any intention to raise such a defense.

1      was being discussed?

2      A.     We were trying to figure out when he was in custody and

3             when he was out of custody to see if these pictures and

4             the dates on the print message would match when he was

5             out of custody.

6      Q.     When you're referring to the print dates, are you

7             referring to the dates on Government's Exhibit 125?

8      A.     Correct.

9  (TR 78:7-21.)  In light of these facts, the only reasonable

10 conclusion to draw is that the images were downloaded, and

11 therefore received, on the dates defendant acknowledged in his

12 interview: 2005-2006.

13     Third, Government's Exhibit 81 contains defendant's

14 fingerprint (TR 98:9-16), and that image contains a 2004

15 copyright, which for all the reasons outlined in the Court's July

16 21, 2009 order, would be admissible evidence.  Therefore, at

17 least one of the images necessarily must have been created after

18 2004, which would be well within the statute of limitations.

19             3.    Defendant Possessed His Child Pornography Within
                     the Statute of Limitations
20

21     Defendant maintains that the government failed to establish

22 when defendant possessed images of child pornography.  (TR

23 214:21-215:1.)  He is wrong -- overwhelming evidence establishes

24 that defendant possessed his child pornography continuously from

25 the time he downloaded (or "received") it until it was discovered

26 by church personnel on August 22, 2007.

27     A person has possession of something if the person knows of

28 its presence and has physical control of it, or knows of its

14

1  presence and has the power and intention to control it.   See

2  Ninth Circuit Model Criminal Jury Instructions, No. 3.18 (2003).

3  To establish possession, the government must prove a sufficient

4  connection between the defendant and the contraband to support

5  the inference that the defendant exercised dominion and control

6  over it.   See United States v. Gourde, 440 F.3d 1065, 1082 (9th

7  Cir. 2006)(citing United States v. Carrasco, 257 F.3d 1045, 1049

8  (9th Cir. 2001).   "[P]ossessory offenses have long been described

9  as 'continuing offenses' that are not complete upon receipt of

10 the prohibited item.   Rather, the statute of limitations does not

11 begin to run until the possessor parts with the item."   United

12 States v. Krstic, 558 F.3d 1010, 1017 (9th Cir. 2009); see also

13 United States v. Walker, 27 F.3d 417, 420 (9th Cir. 1994)

14 (possession continues until possession is relinquished).

15         Here, the government demonstrated through defendant's

16 confession and fingerprint evidence that defendant possessed the

17 child pornography, and that he continued to exercise control over

18 it until it was discovered on August 22, 2007 -- well within the

19 statute of limitations.   First, defendant himself admitted

20 possessing the child pornography.   When defendant was asked where

21 he specifically put Government's Exhibits 1-95 (the child

22 pornography images), he said he put them under a "cabinet."

23 (Govt. Exh. 106(D).)   Second, and relatedly, defendant makes

24 clear that he had control over the child pornography in that he

25 hid it and accessed it on many occasions.   Defendant admits that

26 he was always in the nursery where he hid the images "late at

27 night."   (Govt. Exh. 106(E).)   Defendant agrees that he went to

28 great lengths to ensure that no one discovered his collection of

15

1  child pornography:

2          BENITEZ:   So, all this time that you went into the

3                       church on...We're talking the First

4                       Presbyterian Church, nobody was there.

5          WELTON:    I wouldn't go in when there was someone

6                       there anyway.

7          BENITEZ:   Okay, yeah.

8          WELTON:    No way.

9                       . . .

10         WELTON:    And if anybody came...

11         BENITEZ:   ...and there was no...

12         WELTON:    ...I would run, I was gone, gone.

13         BENITEZ:   Okay.

14         WELTON:    See ya later, man, I'm outa here.

15         BENITEZ:   Did you, when you were coming in, did you

16                       bring stuff all the...`Cause these are

17                       different dates that you could bring...

18         WELTON:     Mm-hmm.

19         BENITEZ:   Did you keep adding to it, or did you just

20                       have a stash in, in...

21         WELTON:    I might of, uh, put some with it once, or

22                       twice or somethin'. I'm not sure.

23         BENITEZ:   Okay. `Cause...

24         WELTON:    I don't know.

25         BENITEZ:   ...nobody found this for a long time...

26         WELTON:    Yeah.

27         BENITEZ:   ...so you really...Did you push it, push it

28                       back beneath the cabinet, or was it under

1 |                         the cabinet or was it pushed back?

2 | WELTON:      The cabinet, and underneath it is a hollow

3 |              spot...

4 | BENITEZ:     Okay.

5 | WELTON:      ...or whatever, and you can lift it up and

6 |              just put it right under there and that's it.

7 | BENITEZ:     No one ever checked that.

8 | WELTON:      No.

(Govt. Exh. 106(I)).  Defendant explained that he had access to the images because the church door was usually open.  (Gov't. Exh. 106(e)).  Defendant also admits that he would repeatedly go back into the nursery to access the images and add to his collection.  (Gov.'t Exh. 106(e).)   Third, the images themselves demonstrate that on at least thirteen different occasions, defendant accessed a computer, downloaded images, printed them and brought them to the First Presbyterian Church.  (See, e.g., Gov't. Exhs. 60 (8/30/2005); 1 (11/8/2005); 67 (11/13/2005); 77 (12/3/2005); 86 (12/5/2005); 32 (12/8/2005); 75 (12/17/2005); 31 (12/18/2005); 39 (12/19/2005); 50 (2/16/2006); 10 (2/18/2006); 33 (2/19/2006); 28 (2/25/2006); and 43 (3/3/2006)).[8]  The evidence also established that defendant at no time relinquished control over the images.  (Gov't. Exh. 106(I)).  Fourth, Latent Fingerprint Expert Kathryn Suchma testified that she located defendant's fingerprints on Government's Exhibits 13, 31, 41, 60, 61, 66, 78 and 81.  (TR. 98:9-16.)  Government's Exhibit 66 clearly contains five separate images of child pornography.

_____

[8] See footnote 5 above.

17

1  (Gov't. Exh. 66.)

2      In light of this overwhelming evidence that defendant
3  possessed the child pornography, repeatedly accessed it, returned
4  to add to his collection, and went to great lengths to ensure
5  that no one else discovered them, the government has established
6  that defendant retained possession of the images until they were
7  discovered in August 2007.  This is within any applicable statute
8  of limitations.

9          4.    <u>The Court May Rely On The Testimony Defendant</u>
                 <u>Introduced Regarding the Time Stamps on</u>
10               <u>Defendant's Child Pornography</u>

11      The government respectfully contends that, in addition to
12  the evidence the government elicited as set forth in subsections
13  2 and 3, above, the Court may consider the evidence defendant
14  himself elicited -- in particular, the evidence defendant
15  elicited regarding the reliability of the time stamps in the
16  "footers" printed on defendant's child pornography.

17      On July 7, 2009, the government filed a Motion in Limine to
18  admit the header and footer information contained on Government's
19  Exhibits 1-95.  Despite defendant's objections, the Court ruled
20  on July 17, 2009, that the header and footer information was not
21  hearsay and, provided the government could properly authenticate
22  the evidence, the information would be admissible at trial.
23  (Court's July 17, 2009 Order at 5.)

24      At the beginning of the trial, the government represented to
25  the Court that it was not offering the header and footer
26  information for the truth of the matter asserted.  (TR 7:24-8:1.)
27  The government did nothing throughout the entire trial to deviate
28  from that representation.  In particular, the government did not

1   attempt to offer any evidence through its computer expert

2   regarding the accuracy of the date stamp information in the

3   footer of many of the images.

4        Defendant, however, did elicit this information.

5   Specifically, defense counsel elicited the following regarding

6   Governments Exhibits 1-95, which were directly before the witness

7   at the time:

8        Q.   You haven't offered an opinion about the actual

9             date and time that these images were actually

10            downloaded and printed.  That's because you don't

11            know what date and time they were actually

12            downloaded and printed; right?

13       A.   It's my experience that the date and time may not

14            be precise, but it's at least fairly accurate.

15       Q.   But that's actually -- the date and time

16            information is located on an Internet page, which

17            is -- which is translated by a browser, that can

18            be readily and easily changed by the

19            computer user; right?

20       A.   Yes.

21       Q.   And so if a user alters the clock on their

22            computer, that date and time information is not

23            reliable; right?

24       A.   That's correct.

25       Q.   In fact, it's guaranteed to be wrong.

26       A.   That's correct.

27       Q.   There are other ways that a date and time on a

28            website can be inaccurate that don't have anything

                                19

1 |      to do with the end user; right?

2 | A.   On a website?

3 | Q.   With respect to a -- to the date and time

4 |      information that's actually listed on a computer

5 |      printout.

6 | A.   So if the user doesn't modify it, can the date be

7 |      incorrect? Is that your question?

8 | Q.   Correct.

9 | A.   It can be off by a few minutes.

10 | Q.   It can be off by years; right?

11 | A.   Based on my training and experience, unless the

12 |      battery runs out on the mother board, it's usually

13 |      accurate within a few hours, maybe even a day.

(TR 177:21-178:25.)   Through this questioning, defendant elicited
from Agent Christopherson: (1) that he could indeed tell when the
images were downloaded and printed, by referring to the date and
time information in the footer; and (2) that such information is
"usually accurate within a few hours, maybe even a day."   This
testimony went uncontroverted and without objection.

Though the government stands by its representation that it
would not offer the header and footer information on the images
for the truth of the matter asserted, that is, that the images
were printed on the date shown in the header or footer, the Court
should consider whether by eliciting testimony regarding the
accuracy of the header and footer information, defendant himself
has offered evidence that would provide the court with a basis
for considering the header and footer information as establishing
the dates on which the images were printed.   If the Court

20

concludes that defendant's eliciting of this testimony provides such a basis, then this would be additional evidence establishing that defendant's receipt of the images occurred in 2005 and 2006, well within any applicable statute of limitations.   If the Court concludes that it does not, the government submits that even without this additional evidence, the evidence cited in sections 2 and 3 above continues to provide sufficient evidence that defendant's receipt of the images occurred in 2005 and 2006, well within any applicable statute of limitations.

## III.  CONCLUSION

For the foregoing reasons, the government respectfully requests that defendant's Motion for Acquittal pursuant to Federal Rule of Criminal Procedure 29 be denied, and that the Court find defendant guilty of receiving and possessing child pornography.

Dated: August 10, 2009

                                    Respectfully submitted,

                                    THOMAS P. O'BRIEN
                                    United States Attorney

                                    CHRISTINE C. EWELL
                                    Assistant United States Attorney
                                    Chief, Criminal Division


                                    _____/s/_____
                                    J. LANA MORTON-OWENS
                                    Assistant United States Attorney
                                    Attorneys for Plaintiff
                                    UNITED STATES OF AMERICA

                                    21